UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

STEVEN C. MOORE,

    Defendant.

Case No. 2:19-cr-214
JUDGE EDMUND A. SARGUS, JR.

## OPINION AND ORDER

This matter is before the Court on Defendant Steven C. Moore's ("Defendant") Motion to Suppress (ECF No. 41), the Government's Response in Opposition (ECF No. 48), and Defendant's Reply in Support (ECF No. 49). The Court held a hearing on Defendant's Motion on September 8, 2020. The parties filed post-hearing supplemental briefs (ECF Nos. 54, 56). For the reasons that follow, Defendant's Motion (ECF No. 41) is **DENIED**.

### I.

The facts of this case were presented during the hearing through: Officer Harry Dorsey's testimony, photos taken of the scene of the incident, Officer Dorsey's police car dash camera video portraying the incident, and the police report from the night in question.

On August 26, 2019, just before 3:00 AM, Columbus Division of Police ("CPD") Officers Christopher Sturgell and Harry Dorsey were conducting routine patrol near a Sunoco gas station on the west side of Columbus, Ohio. Officer Dorsey had been a patrol officer for nine years, six of which occurred in the same area he was patrolling on the morning in question. Officer Dorsey testified that this gas station, while open and operating, is frequently the scene of criminal activity involving drugs, weapons, and more. (*See* Tr. at 432, ECF No. 53 (noting the area had "large

numbers of narcotics and weapons-related offenses directly stemming from that gas station").) Officer Dorsey also testified CPD officers are frequently called to the gas station, and also patrol it voluntarily, in order to combat the criminal behavior that occurs there. The City of Columbus has filed legal action to abate the claimed public nuisance caused by criminal activities at the gas station.[1]

While patrolling near the gas station, Officers Sturgell and Dorsey observed a silver Ford Taurus exit the gas station's parking lot as the Officers pulled into the lot. The Officers ran the license plate number, a fairly common action for officers patrolling in that area and learned that the vehicle was registered to Defendant and there was an outstanding warrant for Defendant's arrest. The warrant was lodged by the United States Marshalls Service in the LEADS criminal records system and the computer reference noted Defendant had violated his supervised release and had a previous felony conviction involving weapons.[2]

The vehicle pulled over to the side of the road and the driver, a woman, got out of the car. The woman, later identified as Brooklyn Reynolds, began moving away from the car. Officer Sturgell placed Ms. Reynolds in handcuffs. Officer Dorsey testified that in his experience, while it is normal for people to be nervous when making contact with police officers, generally when people are trying to separate themselves from a vehicle, there is a reason they do not want to be associated with that vehicle.

---

[1] Defendant contends this testimony is not credible as the characteristics of the location were not discussed on the dash camera video or in the police report. (Def.'s post-Hr'g Br. at 2, 5, ECF No. 56.) Defendant does not argue, however, that there is any evidence to the contrary showing this area was not one of high crime. The Court finds Officer Dorsey's testimony as to the area credible.
[2] During the hearing Officer Dorsey could not recall whether the LEADS system he used to find the warrant showed a violation of supervised release or whether he subsequently learned this information from the dispatcher over the radio. Officer Dorsey was clear, however, that he knew that there was a warrant for Defendants' arrest as a result of a violation of supervised release and that Defendant had a previous federal felony conviction involving weapons.

Officer Dorsey approached the vehicle and saw a man lying in the backseat covered with a blanket and a sweatshirt. Officer Dorsey observed the man moving has hand toward the pocket behind the passenger seat and thus, Officer Dorsey ordered him to put his hands in the air.[3] The man complied. Officer Dorsey requested from the dispatcher the name and description of the vehicle owner. The dispatcher informed Officer Dorsey the vehicle was registered to Defendant and gave him a description. The description matched the man lying in the backseat in all ways except the height, which varied by a few inches.

Officer Dorsey asked the man his name and he stated that he was Sean Anthony. Officer Dorsey asked the man to get out of the car and placed him in handcuffs. The man argued with Officer Dorsey about his name and ability to arrest him. The Officers asked both Ms. Reynolds and Defendant who owned the car. Neither answered the question. Officer Dorsey was then able to identify the man as Defendant through a photograph associated with the United States Marshalls' arrest warrant. The Officers placed Defendant under arrest and put him in Officer Wilkinson's vehicle, who had arrived on the scene to assist. The Officers advised Ms. Reynolds she was not in trouble and could leave if she had a valid license and there were no weapons or contraband in the car. The Officers confirmed Ms. Reynolds had a valid license and had been truthful as to her identity.

Officer Dorsey was training Officer Sturgell who was new to the police force. Officers Dorsey and Sturgell are depicted on the dash camera video, discussing which areas of the vehicle can be searched. They discussed searching the vehicle as part of a "search incident to arrest" and because they planned to give the vehicle back to Ms. Reynolds and allow her to drive it home.

---

[3] Defendant argues this testimony is not credible as the dash camera video does not depict Defendant reaching for the pocket and it is not noted in the police report. The Court cannot discern from the video whether Defendant was moving his hands in any particular direction, but the video does show Officer Dorsey telling Defendant to keep his hands up.

3

The Officers looked in the backseat of the car first. They found a loaded 9mm Smith and Wesson handgun located in the back-pouch of the passenger seat, a holster in the back-pouch of the driver's seat, and a single round of ammunition on the floor behind the passenger seat car.[4]

CPD Officers took Defendant to CPD Headquarters Identification Bureau and then transported him to the Franklin County Jail. The vehicle was impounded. In October of 2019 the grand jury returned an indictment charging Defendant with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Defendant now seeks to exclude the evidence obtained as a result of the search of his vehicle on August 26, 2019. (Mot. Suppress at 4, ECF No. 41.)

II.

A defendant may seek the suppression of evidence by filing a pretrial motion with the court. Fed R. Crim. P. 12(b)(3)(C). "It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014) (citation omitted). Defendant argues the Officers at the traffic stop on August 26, 2019, violated the Fourth Amendment when they searched his vehicle. (Mot. Suppress at 4.)

The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ." U.S. Const. Amend. IV. "It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment." *United States v. Jones*, 565 U.S. 400, 404 (2012). "An automobile stop is thus subject to the constitutional

---

[4] Defendant argues the police report contends Officer Sturgell found the firearm while the video shows Officer Dorsey finding the gun. (Def.'s Post-Hr'g Br. at 3, 7.) Defendant argues this is relevant to the unreliability of Officer Dorsey's testimony. Officer Dorsey explained that he had first seen the firearm, but wanted Officer Sturgell to locate the weapon as part of his training. The Court finds Officer Dorsey entirely credible. Further, there is no evidence to the contrary.

4

imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996).

"In considering any [] search of [a] vehicle, [courts] begin 'with the basic rule that searches conducted outside of the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir 2013) (quoting *United States v. Gant*, 556 U.S. 332, 338 (2009)). "The Government has the burden of proof to justify a warrantless search." *United States v. Haynes*, 302 F.3d 669, 677 (6th Cir. 2002); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) ("The burden is on those seeking the exemption to show the need for it.") (quotation marks and citation omitted). "The exclusionary rule prohibits the admission of evidence seized in searches and seizures that are deemed unreasonable under the Fourth Amendment, as well as derivative evidence acquired as a result of an unlawful search." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)). The exclusionary rule serves to deter law enforcement from obtaining evidence by unconstitutional means. *Nix v. Williams*, 467 U.S. 431, 442–43 (1984).

The parties agree that Defendant's vehicle was searched and that the Officers did not have a warrant for the search. The Government contends the following exceptions apply and justify the search: (1) search incident to arrest including a protective sweep; (2) the automobile exception; and (3) good faith.[5]

1. **Search Incident to Arrest & Protective Sweep**

---

[5] Defendant, in his motion to suppress, argues the Government cannot make out the inventory exception to the warrant requirement. (Mot. Suppress at 7.) The Government did not respond to this argument or mention the inventory exception in its briefs or during the hearing. The Court therefore assumes the Government agrees with Defendant that the inventory exception does not apply, and the Court need not address it.

5

A search incident to arrest is an exception to the well settled law that warrantless searches are per se unreasonable under the Fourth Amendment. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). In *Gant* the Supreme Court expanded on the search incident doctrine as put forth in *Chimel v. California*, 395 U.S. 752 (1969) and *New York v. Belton*, 453 U.S. 454 (1981) and clarified the two situations when a vehicle may be searched without a warrant incident to an arrest. First, police may search, without a warrant, those portions of a vehicle immediately accessible by a person following his arrest "from which he might be able to gain possession of a weapon or destructible evidence." *Gant*, 556 U.S. at 335. Second, "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id.* The Sixth Circuit has stated that a "[r]easonable belief is established by looking at common sense factors and evaluating the totality of the circumstances." *United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir. 2006). Importantly, the Sixth Circuit stated a "reasonable belief" is "lesser" than the probable clause standard. *Id.*

The Government argues that upon arresting Defendant, the Officers were allowed to search the area of the vehicle which was within Defendant's immediate control including the backseat of the car, which is where the gun, holster, and ammunition round were found. (Gov't Resp. at 5–6, ECF No. 48.) Defendant, in contrast, argues neither prong of *Gant* can be satisfied because Defendant was secured in the police car when the search occurred and there was no evidence of the crime of arrest which could have been found in the car. Defendant's arguments are well-taken.

First, courts have made clear that in order to search under the first prong of *Gant*, the defendant must be unsecured and within reaching distance of the area searched. *See e.g., United States v. Reagan*, 713 F. Supp. 2d 724, 727 (E.D. Tenn. 2010) (noting that it was undisputed that the search of the car occurred when the defendant was arrested and secured in the police car and

6

thus not within reaching distance of the car and therefore, the only way the search incident could be reasonable was if there was a reasonable belief to think there was evidence of the offense in the car); *Kirk v. Muskingum Cnty Ohio*, No. 2:09-cv-583, 2010 U.S. Dist. LEXIS 97595, at *23 (S.D. Ohio Sept. 17, 2010) (noting that because the plaintiff was in the police car before the search began there was no reason to believe he could access weapons in the car and *Gant* was not satisfied). Because Defendant was secured and in the backseat of Officer Wilkinson's car at the time the Officers searched the vehicle, the Government cannot rely on the first prong of *Gant*.

Additionally, the Government cannot make out the second prong of *Gant*. The Government acknowledged in its brief that in *Gant* the officers must have a reasonable belief that the car contains evidence of the crime for which the defendant was arrested. (Gov't Resp. at 6.) Here, Defendant was arrested for having an outstanding warrant issued by the United States Marshalls Service for a violation of the terms of his supervised release. The Government has not shown evidence of this crime could be found in the car. Instead, the Government argues that the search was justified because Officer Dorsey "knew at that time that [Defendant] had prior felony weapons-related offenses." (Gov't's Post-Hr'g Br. at 10, ECF No. 54.) Officer Dorsey did at times testify that he seemed to believe the warrant was related to the weapons offense. (*See* Tr. at 431–31, 447.) The arrest report makes clear, however, that while the officer knew about a weapons related offense, the actual arrest was made pursuant to "an active felony warrant out of the US Marshall's Service for a probation violation." (Arrest Report at 2.) *Gant* requires a reasonable belief the car will contain evidence of the offense of arrest, not another offense to which the officer knows the defendant has committed. The Government, therefore, cannot rely on the second option in *Gant*. Neither prong of *Gant* is satisfied.

In connection with its argument that the search was justified by *Gant*, the Government argues that the search was justified by the doctrine put forth in *Michigan v. Long*, 463 U.S. 1032 (1983). (*See* Gov't Post-Br. Hr'g at 11–13.) In *Long*, the Supreme Court extended the scope of a protective search of the vehicle:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

463 U.S. at 1049 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)) (footnote omitted). Importantly, under *Long* an officer can search the passenger compartment "when the officer has a reasonable suspicion that an individual, *whether or not the arrestee*, is dangerous and might access the vehicle to gain immediate control of a weapon." *United States v. Ware*, 465 F. App'x 487, 494 (6th Cir. 2012 (emphasis added).

The Government argues that Officer Dorsey, planning to allow Ms. Reynolds to drive the car away, needed to do a protective sweep of the car before allowing Ms. Reynolds access to it. (Gov't Post-Br. Hr'g at 12.) In support, the Government notes that Officer Dorsey had already seen Ms. Reynolds try to walk away from the car and she refused to state who owned the vehicle. (*Id.* (citing Tr. at 494).) Thus, the Government contends *Long* justified a protective sweep of the car before giving Ms. Reynolds access to it.

The Government cannot rely on *Long* in this case for there is no evidence to support a reasonable belief that Ms. Reynolds was a dangerous person. Ms. Reynolds was compliant in following the Officers' directions and providing the officers her name. Prior to the search there was no evidence Ms. Reynolds had committed any crime. That Ms. Reynolds was somehow associated with Defendant or in a high crime area at night, alone, is not enough for a reasonable

8

belief that Ms. Reynolds was a dangerous person when coupled with the evidence of her cooperation with the officers. *See United States v. Nobel*, 763 U.S. 509, 523–24 (6th Cir 2014) (noting "a person's mere presence in a car" which police believe is connected to criminal activity does not give rise to reasonable suspicion to frisk that person especially when the individual "complied with all commands"); *see also United States v. Bell*, 762 F.2d 495, 499 (6th Cir. 1985). At most Ms. Reynolds appeared nervous, and "nervousness—even extreme nervousness—'is an unreliable indicator' of someone's dangerousness, 'especially in the context of a traffic stop.'" *Id.* at 522 (quoting *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004)). *Long* does not justify the search of the vehicle.

In sum, the search is not justified by the search incident doctrine or a protective sweep. The Court will next consider whether the automobile exception justifies the search.

### 2. The Automobile Exception

"Under the automobile exception to the warrant requirement, 'an officer may search a readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) (quoting *United States v. Redmond*, 475 F. Appx. 603 (6th Cir. 2012)); *see also Carroll v. United States*, 267 U.S. 132, 149, (1925) ("[I]f the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid."); *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012) ("[A]n officer may perform a warrantless search of a detained vehicle if the officer has probable cause to believe the vehicle contains contraband or evidence of criminal activity."). Unlike the search-incident exception to the warrant requirement, under the automobile exception

9

the officers may have cause to believe the vehicle contains evidence of *any* offense, not necessarily the offense of arrest. *United States v. Odoms*, No. 2:17-cr-210, 2018 WL 2752457, at *3 (S.D. Ohio June 8, 2018) (quoting *United States v. Edwards*, 769 F.3d 509, 515 (7th Cir. 2014)).

"Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir.1991)). "In determining whether there was probable cause, the [C]ourt does not look to events that occurred after the search or to the subjective intent of the officers; rather, the court looks at the 'objective facts known to the officers at the time of the search.'" *United States v. Smith*, 520 F.3d 641, 648 (6th Cir. 200) (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1998).

The Government argues the following objective facts, which were known to the Officers at the time they decided to search the vehicle, created probable cause, or a fair probability, that contraband or evidence of criminal activity would be found inside Defendant's vehicle. The Government's argument is well-taken.

First, the Officers saw Defendant's car in a high crime area early in the morning and specifically in the lot of a gas station which is well known for being the scene of criminal activity. *See Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1998) (noting the car was found in the early morning hour in a high crime area in determining whether probable cause existed to search the vehicle); *see also Illinois v. Wardlow*, 526 U.S. 119, 124 (2000) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation."). Importantly, even if Defendant was not committing any crime while near the gas station known for criminal activity, the location and time

of day are objectively relevant facts to the Officers at the time of the search. Next, the vehicle pulled out of the gas station lot when the Officers arrived. Once the Officers ran the license plate, they discovered that the owner of the car had a warrant out for his arrest, had violated his supervised release, and had a previous federal weapons charge. After the vehicle stopped, the driver exited the vehicle and tried to separate herself from it. Officer Dorsey testified that in his experience and training this is a behavior displayed when a person wants to distance themselves from the vehicle for a particular reason, which is more than just nervousness about interacting with a police officer.

Additionally, once the Officers saw Defendant, the fact that he was apparently trying to conceal himself in the backseat gave the officers suspicion as to why he was hiding. *See Lyons*, 687 F.3d at 770 (noting that nervous and evasive behavior may be considered as part of the probable cause analysis). Further, they saw Defendant reaching for the pocket on the back of the passenger side car.[6] Defendant then concealed his identity by using a false name. *See United States v. Humphrey*, No. 90-3722, 1991 U.S. App. LEXIS 6913, at *12 (6th Cir. 1991) (noting a defendant's lies are relevant to probable cause). Once outside of the vehicle, Defendant was verbally argumentative about his identity and the fact that he had a warrant out for his arrest. Additionally, once outside the vehicle neither Defendant, nor Ms. Reynolds would confirm who owned the vehicle.

All of these objective facts together gave the Officers probable cause to believe evidence of a crime was inside the vehicle. Defendant argues the automobile exception does not apply because the dash camera video shows the Officers' discussion, and they believed they were

---

[6] As stated above, Defendant disputes this characterization of his action in the backseat. There is, however, no evidence to support this position. Even if the Court eliminated this fact, however, and assumed Defendant had not reached for the back pocket there are still sufficient objective facts known to the officer at the time of the search to provide probable cause.

11

executing a search incident to arrest or a protective sweep. Importantly, however, the subjective intent of the officers is not relevant. *Smith*, 520 F.3d at 648. Defendant also argues that there could be no evidence inside the vehicle of a violation of supervised release and falsification by providing a false name. Under the automobile exception, however, the officers only needed to have evidence of criminal activity, not necessarily tied to the crime of arrest. *Odoms*, 2018 WL 2752457 at *3.

The Court finds the automobile exception justifies the search without a warrant. Thus, the police did not violate the Fourth Amendment and the evidence found in the search is not suppressed.[7]

### III.

For the reasons stated herein, Defendant's Motion for to Suppress (ECF No. 41) is **DENIED**.

**IT IS SO ORDERED.**

9-17-2020
DATE

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

---

[7] The Government also argues the good faith exception applies because the Officers acted in good faith in conducting the search believing it was a legal search. (Gov't Resp. at 8.) The Court need not determine whether the good faith exception applies but notes that courts have only allowed the doctrine to be relied on in very narrow circumstances. *See Davis v. United States*, 56 U.S. 229, 238 (2011) (noting the Supreme Court has applied a good faith exception to warrantless searches when police search in reasonable reliance on: a warrant later held invalid, a subsequently invalidated statute, erroneous records in a warrant database, and binding judicial precedent later overturned).